IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00539-FL

**Thomas F. Kaston,**

              Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

              Defendant.

**Memorandum & Recommendation**

Plaintiff Thomas F. Kaston instituted this action on December 14, 2015, to challenge the denial of his application for social security income. Kaston claims that the Administrative Law Judge ("ALJ") Kelly Davis erred in: failing to properly evaluate his chronic fatigue syndrome, failing to afford great weight to the opinions of Drs. Spanos and Yount, failing to discuss his Tarlov nerve impairment, and in evaluating his credibility. Kaston further argues that ALJ Davis failed to protect his rights as a pro se claimant and asked questions of the Vocational Expert ("VE") which did not reflect all of his limitations and impairments. Both Kaston and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 20, 23.

After reviewing the parties' arguments, the court has determined that ALJ Davis reached the appropriate decision. There is substantial evidence to support the ALJ Davis's consideration of Kaston's impairments, the weight afforded to the medical opinion evidence, and her assessment of his credibility. ALJ Davis's hypothetical questions to the VE were proper and she appropriately addressed Kaston's pro se status. Therefore, the undersigned magistrate judge

recommends that the court deny Kaston's motion, grant Colvin's motion, and affirm the Commissioner's decision.[1]

## I.     Background

On March 2, 2012, Kaston protectively filed an application for disability insurance benefits alleging a disability that began on September 5, 2000. After his claim was denied at the initial level and upon reconsideration, Kaston appeared at a hearing before ALJ Davis on December 12, 2013, for a hearing to determine whether he was entitled to benefits. ALJ Davis determined determined Kaston was not entitled to benefits because he was not disabled.  Tr. at 14–21.

ALJ Davis found that Kaston had the following severe impairments: degenerative disc disease, chronic fatigue syndrome ("CFS"), and gastroesophageal reflux disease ("GERD"). *Id.* at 16. ALJ Davis also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Davis then determined that Kaston had the RFC to perform a full range of medium work. *Id.* at 17. ALJ Davis concluded that Kaston was capable of performing his past work as a company president and network control operator. *Id.* at 20. Thus, ALJ Davis found that Kaston was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Kaston commenced this action. D.E. 1.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

**B.    Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

## C.    Medical Background

The relevant time period at issue before ALJ Davis was September 5, 2000, Kaston's alleged onset date, to December 31, 2005, his date last insured ("DLI"). Tr. at 16.

Kaston received treatment at Neurology & Pain Management Center in 2000. Records note a weight loss of approximately 15 pounds and hand tremors, as well as a positive test for IgM, indicative of an early stage infection of the Epstein Barr Virus ("EBV"). *Id*. at 279.

In 2005, Dr. Hubert Haywood, an infectious disease specialist, treated Kaston on three occasions. *Id*. at 311–30. Although he reported fatigue, weakness, and headaches, physical exams were generally unremarkable. *Id*. at 316–20. Dr. Haywood noted that Kaston's EBV antibodies were elevated, and he requested that these be monitored. *Id*. at 316–17. Dr. Haywood ruled out EBV encephalitis. *Id*.

Dr. David Konanc, a neurologist, saw Kaston in 2005. *Id*. at 409–10. Kaston reported muscle spasms and imbalance. *Id*. Dr. Konanc's exam yielded normal findings, but he suggested Kaston avoid migraine triggers. *Id*.

Kaston's medical history also includes gastritis and hiatal hernia with abdominal discomfort. *Id*. at 247–48. Medication and lifestyle modifications provided relief, with only a couple of occasions of mild reflux reported thereafter. *Id*.

Cary Gastroenterology practitioners examined Kaston in 2004 for complaints of heartburn, nausea, weight loss, and fatigue but concluded that he was doing well overall. *Id*. at 261, 263. In April 2005, treatment notes reflect that Kaston seemed very happy, his weight had increased, and he felt good with minimal pain since diet modification and taking the medication Zilgrid. *Id*. at 291. An endocrine consultation in 2005 found that most of Kaston's problems were gastrointestinal in nature. *Id.* at 299.

4

In 2004 and 2005, Kaston had problems with nocturia and frequent urination, which were treated with different medications, with variable relief. *Id*. at 338–44, 347. Kaston underwent a CT scan of his abdomen in December 2004. *Id*. at 348. He received treatment for prostatitis in 2006. *Id*. at 303.

Kaston returned to Dr. Haywood in 2007 complaining of fatigue and urinary problems. *Id*. at 312–13. An exam was normal. *Id*. Lab studies suggested Kaston may have had an acute EBV infection at that time, although he had no manifestations of such. *Id*. at 311.

In February 2006, Dr. A. Silvia Ross, a rheumatologist, examined Kaston. *Id*. at 387–91. He reported symptoms of fatigue and weakness over the previous three years, which had progressed in the previous year. *Id*. at 387. His exam was unremarkable except for some tenderness. *Id*. at 390. There were neither positive fibromyalgia trigger points nor signs of inflammatory joint or muscle disease. *Id*. Dr. Ross diagnosed Kaston with malaise, myalgia, and fatigue, and recommended medication to assist him with sleep. *Id*. at 390–91. Kaston was subsequently examined by Dr. Walter Chmelewski in 2008 for fatigue, weakness, and pain, but his exam was unremarkable. *Id*. at 392–93.

Kaston's medical record also discloses reports of low back pain and abdominal discomfort in 2006. An MRI in June 2006 disclosed a shallow disc protrusion at L5-S1, mild, early degenerative disc changes at L2-3 and L4-5, and a nerve root sleeve diverticulum at the right S3 root, described as a small, cyst-like structure. *Id*. at 308. This was subsequently identified as a possible Tarlov cyst in 2011. *Id*. at 538.

There is a gap in treatment until 2011. At that time, one provider opined that fibromyalgia best explained Kaston's presentation. *Id*. at 413. In 2011 and 2012, Kaston sought treatment with Dr. William Yount, an infectious disease specialist. Dr. Yount observed that the

IgM antibodies remained low or normal, and that Kaston exhibited no concerning symptoms of EBV. *Id*. at 432–37, 443, 447, 517–31.

Dr. Alan Spanos treated Kaston for chronic fatigue in 2011. *Id*. at 492–99. He reported doing better with medications. *Id*. at 492–99, 509.

### D. Medical opinion evidence

Kaston first argues that ALJ Davis should have given more weight to the opinions of his treating providers, Drs. Spanos and Yount. He maintains that ALJ Davis erred by giving more weight to the opinions of non-treating medical sources and by failing to provide good reasons for assigning less weight to findings of his treating providers.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05–CV–46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96–6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

6

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(d)(4).

In her decision, ALJ Davis discussed the medical evidence from Drs. Spanos and Yount. *Id.* at 18–19. She found that although these providers opined that Kaston was significantly limited, their treatment notes, with minima objective findings, did not support their conclusions. *Id.* at 19.

### 1.    Dr. Spanos

Kaston contends that Dr. Spanos's opinion is entitled to more weight. He states that Dr. Spanos has 40 years of experience, specializes in the treatment of CFS and fibromyalgia, and performed an in-depth workup of Kaston. He further asserts that Dr. Spanos conferred with Dr. Haywood and that records establish a CFS diagnosis during the relevant period.

7

In considering Dr. Spanos's medical records, ALJ Davis noted that his examination in June 2011 showed normal ranges of motion in his cervical and lumbar spines, normal strength in all muscle groups, intact sensation, and normal gait with good balance. Tr. at 18. She remarked that Dr. Spanos's reports of disability were not supported by his minimal objective findings. *Id.* at 19. Additionally, Dr. Spanos acknowledged that Kaston's treatment records provided no evidence of his degree of medical impairment or occupational disability prior to his first examining Kaston in June 2011. *Id.* These reasons support ALJ Davis's finding that Dr. Spanos's opinions were not entitled to great weight. *Id.* Finally, ALJ Davis found CFS was a severe impairment. Accordingly, the diagnosis or existence of this condition during the relevant period is not in doubt.

### 2. Dr. Yount

Kaston also contends that Dr. Yount is a CFS and fibromyalgia specialist with 40 years of experience. He maintains that Dr. Yount found that he was disabled beginning in 2005 based on the medical evidence, which included elevated EBV antibodies and a history of fatigue.

ALJ Davis observed that Dr. Yount's findings included that Kaston's immune system was excellent, that he displayed no manifestations of an EBV infection, and that "his symptoms far outweigh his findings." *Id.* In February 2012, however, Dr. Yount opined that Kaston could do no sitting, standing, lifting, or carrying. *Id.* ALJ Davis found such limitations were not supported by Dr. Yount's treatment records from the previous year, which found no significant musculoskeletal, neurological, or abdominal abnormalities. *Id.* Given the inconsistencies between the treatment notes and his opinions, ALJ Davis properly declined to give great weight to Dr. Yount's opinion.

Both Drs. Spanos and Yount first treated Kaston many years after his DLI. Their treatment notes fail to reflect his condition during the relevant time period, and therefore offer little insight into his functional abilities for the period prior to his DLI. Inasmuch as there is no error in the consideration and weighing of the medical opinion evidence, Kaston's argument on this issue should be rejected.

### E.    Impairments

Kaston next contends that ALJ Davis failed to evaluate his CFS under Social Security Ruling ("SSR") 99-2p and that she failed to consider his Tarlov nerve lesion and its effects on his ability to function. The Commissioner asserts not only that ALJ Davis properly analyzed his CFS and the resulting limitations, but also that the record demonstrates that his Tarlov nerve condition, and its effects, were properly considered.

### 1.    Chronic Fatigue Syndrome

Kaston asserts that ALJ Davis failed to give full consideration to his CFS. He contends that she failed to discuss SSR 99-2p, which provides standards for evaluating claims of disability based upon CFS. SSR 99–2p, Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS), 64 Fed. Reg. 23380 (Apr. 30, 1999). He also argues that ALJ Davis misinterpreted laboratory results as to his EBV.

Under SSR 99-2p, "CFS, when accompanied by appropriate medical signs or laboratory findings, is a medically determinable impairment that can be the basis for a finding of "disability." SSR 99–2p.  The Ruling addresses how the ALJ should determine whether a claimant's symptoms—measured against established medical criteria—support the doctor's diagnosis. *Bowers v. Colvin*, 628 F. App'x 169, 172 (4th Cir. 2105). Kaston avers that laboratory

findings showing elevated EBV titer demonstrates he suffers from CFS. He also submits that his CFS is a medically-determinable impairment.

In proceeding through the sequential evaluation, ALJ Davis noted that Kaston suffered from several severe impairments, one of which is CFS. This finding establishes that his CFS is a medically-determinable impairment.

Although ALJ Davis did not specifically discuss or reference SSR 99-2p, this does not necessarily establish error. An ALJ is not required to explicitly reference relevant social security rulings as long as the requirements set forth therein are followed. *Miller v. Astrue*, No. 7:09-CV-115-FL, 2010 WL 3734027, at *3 (E.D.N.C. Sept. 21, 2010); *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 426 (6th Cir. 2006) (unpublished); *Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003) (unpublished) (finding no duty to cite SSR 99–2p where ALJ's decision "by and large comported with [it]").

Kaston fails to demonstrate what effect a discussion of SSR 99-2p would have on the disability evaluation analysis. Having found not only that his CFS was a medically-determinable impairment but that it was a severe impairment, ALJ Davis concluded that this condition significantly limited Kaston's ability to perform work-related functions. Because ALJ Davis found his CFS a severe impairment, this condition and its effects were considered at each subsequent step of the disability determination. Kaston's diagnosis of CFS alone is not sufficient for a finding of disability to be made. *See Mastro v. Apfel*, 270 F.3d 171, 178–79 (4th Cir. 2001) (affirming Commissioner's decision to deny disability benefits to a claimant who had been diagnosed with CFS, because the diagnosis was not supported by the medical indicia required by SSR 99–2p).

With respect to Kaston's argument that ALJ Davis misinterpreted laboratory results, the undersigned concludes on this issue, too, that there was no error and, even if there were error, it is harmless. ALJ Davis stated that, in 2005, Kaston was found to have antibody titers indicative of EBV although his physical exam was generally unremarkable. Tr. at 18. She further observed that two years later, Dr. Haywood noted that Kaston's EBV titers had returned to normal, even though blood work indicated he had an acute EBV infection as he had no other manifestations of an infection. *Id.*

Kaston contends that Dr. Haywood found that the EBV virus had progressed from an early stage infection to an acute or chronic condition. Dr. Haywood observed that an EBV antibody panel showed a normal VCA IgM with a high VCA IgG. *Id.* at 311. Dr. Haywood further recounted that laboratory results two years earlier showed elevated VCA IgM and significantly lower VCA IgG. *Id.* He opined that the results "may suggest . . . an acute EBV infection at that time although there were no manifestations of it." *Id.* ALJ Davis's findings demonstrate that she correctly reviewed and recapitulated Dr. Haywood's records. For this reason, Kaston's position is unsupported by the record. As ALJ Davis's findings are an accurate summation of the medical record, Kaston's argument on this issue lacks merit.

Kaston also maintains that ALJ Davis placed too much emphasis on the objective evidence. The Regulations provide that the consideration of objective medical evidence is crucial to the disability evaluation process. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms . . . and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). While subjective reports from a claimant are also considered, a claimant's subjective statements alone are insufficient to establish impairment. *See Craig*, 76 F.3d at 592. Kaston's argument on

this issue is without merit as ALJ Davis considered Kaston's statements in conjunction with the objective medical evidence.

### 2.    Tarlov Nerve Condition

Kaston also maintains that ALJ Davis failed to develop the record and faults her for failing to consider his Tarlov nerve condition and its effects on his ability to function throughout the sequential evaluation. He claims that the medical evidence demonstrates the presence of this condition and, further, that it results in identifiable limitations on his functional abilities. Although he alleges genitourinary symptoms associated with this condition, however, the evidence does not support a finding that any such condition is as limiting as he alleges.

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality ... that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).[2] A plaintiff bears the burden of proving severity at step two. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see also Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard ....") (internal citation omitted). To carry that burden, a plaintiff "must provide medical evidence showing ... an impairment(s) and how severe it is ...." 20 C.F.R. § 416.912(c). *See also Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on medical factors alone ....");

---

[2] Applicable regulations further identify "basic work activities" as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

*Washington v. Astrue*, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("A severe impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." (internal quotation marks omitted)); *Flint v. Sullivan*, 743 F. Supp. 777, 782 (D. Kan. 1990) ("A claimant's statements regarding the severity of an impairment are not sufficient."), *aff'd*, 951 F.2d 264 (10th Cir. 1991).

The medical record has little documentation of a Tarlov nerve condition and even less data on its correlated effects. In 2006, after his date last insured, imaging studies showed a small cyst at S-3. Tr. at 308.  In 2011, providers opined that this was possibly a Tarlov cyst, but noted it was unlikely that Kaston's alleged symptoms of parenthesias would relate to the presence of a Tarlov cyst. *Id*. at 541.

Although Kaston contends that he experienced genitourinary symptoms associated with the cyst, the evidence fails to disclose any such symptoms prior to his DLI. Treatment notes from his urologist prior to the DLI reflect complaints of frequent urination and nocturia. *Id*. at 348. Different medications to control urinary flow and frequency provided variable relief. *Id*. at 338–44, 347. As Colvin points out, these symptoms were not disabling because Kaston reported no work-related limitations caused by frequent urination. These symptoms several years earlier have not been correlated to a possible Tarlov cyst. Additionally, at the hearing, Kaston did not offer testimony as to limitations posed by any genitourinary condition.

Kaston alleges in his brief that this condition interfered with his abilities to bend, stoop, crouch, and lift. D.E. 21 at 10. However, the treatment notes of his physical exams fail to reference any such limitations, and Kaston has not connected these alleged limitations to the presence of a Tarlov cyst. Moreover, diagnosis alone is insufficient to establish disability. *See*

13

*Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... says nothing about the severity of the condition."). ALJ Davis recognized that Kaston had serious impairments. Nonetheless, the imparimentsalone, without associated limitations, are insufficient to establish that he is disabled.

Additionally, regardless of its source, Kaston's allegations of the back and pelvic pain he experienced were considered by ALJ Davis, as reflected in her decision. Tr. at 17–19. ALJ Davis found that while Kaston's impairments "could reasonably be expected to cause the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these symptoms" were not fully credible. *Id.* at 20. For reasons discussed more fully below, ALJ Davis did not err in her credibility determination.

As Kaston has failed to establish error by ALJ Davis in her consideration of any of his conditions, including his CFS and possible Tarlov cyst, or their resulting functional limitations, his argument on this issue is without merit.

## F.    Credibility

Kaston next asserts that ALJ Davis erred in finding him not fully credible regarding statements of the limiting effects of his impairments. He argues that the evidence supports findings that he was not malingering and that he strong work history. The Commissioner contends, and the undersigned agrees, that the credibility evaluation was proper.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the

intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig*, 76 F.3d at 592–93. However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. S.S.R. 96–97, 1996 WL 374186, at *6. Moreover, the ALJ *must* consider it in evaluating the individual's statements. *Id.* The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley v. Colvin*, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

ALJ Davis found that Kaston's testimony was generally credible. Tr. at 20. She further concluded that although his medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting

effects of those symptoms was not fully credible. *Id*. She noted his limited treatment and his reported activities, including driving and household chores, were inconsistent with allegations of debilitating symptoms. *Id*.

Although she did not specifically comment on the nature and longevity of Kaston's past work, ALJ Davis did consider it at step four when finding that he could perform such work. It was not error for her to omit a more-detailed reference to his work history. *See Jeffries v. Astrue*, No. 3:10-cv-1405, 2012 WL 314156, 25 (S.D.W. Va. Feb, 1, 2012) ("Although Claimant's work history is commendable, it is not sufficient in and of itself to entitle Claimant to "substantial credibility" given the lack of evidence corroborating Claimant's testimony.")

Kaston also asserts that he did not seek follow-up testing because he already had a CFS diagnosis for his conditions. He also contends that the record discloses that he can only perform the lightest of household chores.

Kaston's arguments are unpersuasive. First, lack of treatment was not the sole reasons ALJ Davis discounted Kaston's statements. However, a claimant's treatment history is a factor relevant to credibility and assessing complaints of impairments and their limiting effects. SSR 96–7p, 1996 WL 374186 (July 2, 1996); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (permitting inference that condition was not "as all-disabling" as reported when claimant did not seek aggressive treatment and alternatives). An ALJ is required to consider a claimant's explanation for not seeking treatment, such as an inability to afford care. SSR 96–7p, 1996 WL 374186, at *7. Here, Kaston maintains that he did not need additional testing. However, the record does not disclose that there was no further, effective treatment available to undertake to treat his symptoms. Accordingly, the infrequency of treatment is a relevant factor that casts doubt on his statements and his credibility.

Additionally, Dr. Spanos's treatment notes reflect that Kaston reported that he was impaired in all activities except dressing, but that he washes dishes and laundry, performed housework, and drove up to 30 minutes. Tr. at 496. As ALJ Davis observed, one of Kaston's treating providers remarked that his symptoms far outweighed the findings. *Id*. at 19. Therefore, ALJ Davis's findings on Kaston's activities are supported by the record.

In considering all the relevant evidence, and mindful of the deference due to an ALJ's credibility finding, the undersigned is unable to conclude that ALJ Davis erred in evaluating Kaston's credibility. Accordingly, his argument on this issue is without merit.

Kaston also objects to the rejection of his wife's statements because she is not a healthcare provider. He contends that the Regulations do not disqualify third party statements from individuals outside of the healthcare field.

In addition to evidence from the acceptable medical sources, an ALJ may also consider evidence from non-medical sources, such as relatives. 20 C.F.R. § 404.1513(d)(4). "Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence." *Morgan v. Barnhart*, 142 F. App'x 716, 731 (4th Cir. 2005). The mere fact that a family member is not a neutral party is an insufficient reason to reject her statements. *See Nance v. Astrue*, No. 7:10–CV–218–FL, 2011 WL 4899754, at *11 (E.D.N.C. Sept. 20, 2011), *adopted by*, 2011 WL 4888868.

Kaston's wife testified that his symptoms have worsened since 1999 or 2000 and that he spends most of his time in a bed or special chair. Tr. at 19. ALJ Davis afforded little weight to these statements noting that his wife was neither a healthcare provider nor an impartial observer. *Id*. ALJ Davis also concluded that the testimony of both Kaston and his wife was "generally

credible, but that their subjective descriptions of symptoms and limitations" were insufficient to support a disability claim prior to 2006. *Id*. at 20.

Kaston is correct that neither his wife's lack of healthcare experience not her lack of impartiality is a grounds to discredit her statements as a third party as to Kaston's symptoms and limitations. *See Nance,* 2011 WL 4899754, at *11; *Stillwater v. Comm'r of Soc. Sec. Admin.*, 361 F. App'x 809, 812 (9th Cir. Jan. 7, 2010) (noting rejection of ALJ's approach to give no weight to testimony because lay witnesses were not medical experts); *Morgan*, 142 F. App'x at 731 (finding statements from family and friends as to daily activities can constitute competent evidence); 20 C.F.R. § 404.1513(d)(4) (specifically contemplating statements from family members). Nonetheless, her statements are consistent with Kaston's. ALJ Davis's reasons for discrediting his statements, including a lack of substantial support from objective findings, support a basis for finding her third-party statements similarly unpersuasive.

Because Kaston's argument amounts to disagreement, not error, his claim on this issue should be rejected.

### G. Hypothetical Questions

Kaston next challenges the hypothetical questions to the VE. He contends that the hypothetical questions were flawed because they did not address his ability to perform work on a sustained basis. He further argues that the hypothetical questions failed to address the combined effects of his severe and non-severe impairments. Finally, Kaston challenges ALJ Davis's failure to include his subjective reports of limitations, including problems with his memory and concentration, anxiety, and disturbed sleep.

"Hypothetical questions posed to a VE must include all of a claimant's impairments that are supported by the record for the VE's answer to be considered substantial evidence." *Drogus*

*v. Colvin*, No. 12–643, 2013 WL 1654809, at \*4 (W.D. Pa. Apr. 16, 2013) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004)); *see also Cuevas v. Astrue*, No. 12–4644, 2013 WL 1932933, at \*5 (D.N.J. May 8, 2013) ("The ALJ's hypothetical must reflect all of the claimant's impairments that are supported by the record."); *accord Johnson v. Barnhart*, 434 F.3d at 659 (holding that a hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that to be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments").

Dr. Spanos opined that Kaston's CFS was worsening and that he could only be active for short periods before requiring days of bed rest. Tr. at 19. As noted above, however, ALJ Davis did not give great weight to this opinion. *Id*. Moreover, in formulating Kaston's RFC, ALJ Davis did not incorporate a limitation on his ability to perform work on a sustained basis. *Id*. at 17. A conclusion can be drawn that she did not find such a limitation supported by the evidence. Additionally, while his subjective statements of pain and limitation were considered, ALJ Davis noted that Kaston's subjective statements were not fully credible. *Id*. at 20. As discussed above, his subjective statements were undermined by a lack of support in the medical findings and the infrequency of treatment.

The record also supports a finding that ALJ Davis considered the combined effects of Kaston's severe and non-severe impairments. In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to

prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). ALJ Davis noted that the five step sequential evaluation process required this. Tr. at 16. In making her findings, ALJ Davis stated that Kaston "did not have an impairment or combination of impairments" that met or equaled a Listing impairment. *Id*. at 16. She discussed Kaston's statements, his impairments, and their effects on his functional abilities. *Id.* at 17–20. In doing so, she analyzed the medical evidence, including treatment notes and opinions. This is sufficient to satisfy the directive of § 404.1523. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (noting that an ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses the claimant's complaints and activities) (citations omitted).

Finally, as ALJ Davis found, at step four, that Kaston was able to perform his past work, the disability analysis ended. 20 C.F.R. § 416.960(b)(1) (if the claimant can still perform past relevant work, the ALJ enters a finding that she is not disabled.). Thus, testimony from a VE regarding transferability of jobs skills and the identification of other jobs he was capable of performing was not required. However, at step five, based on Kaston's age (younger individual), education (high school), work experience (skilled), and RFC (medium), the Medical Vocational Guidelines would direct a finding a finding of "not disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3.

In sum, Kaston has failed to establish that ALJ Davis erred in presenting hypothetical questions to the VE. This argument, therefore, should be rejected.

### H.    Pro Se Status

Kaston also contends that ALJ Davis failed to protect his rights as a pro se claimant. Specifically, he maintains that ALJ Davis failed to probe all relevant facts at the hearing and offered Kaston no guidance on questioning Dr. Spanos or the VE.

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record[.]" *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). An unrepresented claimant is entitled to the sympathetic assistance of the ALJ to develop the record. *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980). An ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record" *Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995) *reported in full at* 1995 WL 347142 (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994) (internal quotation marks omitted)).

A review of the Administrative Record demonstrates that Judge Davis properly developed the record. First, she advised Kaston about the hearing proceedings, his right to representation, and his right to postpone the hearing to obtain representation or to proceed pro se. Tr. at 30–32. Kaston stated that he understood his rights and wished to proceed with the hearing. *Id*. at 32.

After extensive questioning about his vocational and medical backgrounds, symptoms, and treatment, ALJ Davis asked Kaston if there was anything she had not covered that he wanted to tell her. *Id*. at 54. Kaston responded that he did not believe so. *Id*. Following Dr. Spanos's testimony, ALJ Davis also asked him if there was anything else that was not covered that he wanted to share at the hearing. *Id*. at 73. Dr. Spanos replied that there was not. *Id*. ALJ Davis also asked Kaston if there was anything she did not cover with Dr. Spanos that he wanted

addressed. *Id.* at 74. Kaston responded in the negative, and noted that the testimony was "very complete." *Id.* ALJ Davis also noted that Kaston brought additional medical evidence to the hearing. *Id.* at 34.

Moreover, as the Commissioner points out, Kaston was a successful business owner and has ably prepared his disability claim and pleadings in this matter. This suggests that he is not incapable and demonstrates that he is not amongst those claimants of limited education of cognition for whom an ALJ's duty to develop the record is even greater.

ALJ Davis's statements at the hearing and Kaston's responses indicating that he was aware of his rights, he wished to go forward with the hearing, and that he had no additional information for ALJ Davis to elicit at the hearing, demonstrate that ALJ Davis satisfied her duty to develop a full and fair record. Although Kaston now claims that he should have been provided additional guidance at the hearing, as noted above, an ALJ's role is not to act as substitute counsel for an unrepresented claimant. Consequently, his claims of error on this issue lack merit.

## III.     Conclusion

For the forgoing reasons, the court recommends that the court deny Kaston's Amended Motion for Judgment on the Pleadings (D.E. 20), grant Colvin's Motion for Judgment on the Pleadings (D.E. 23), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: January 3rd, 2017

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE